HEARD APRIL TERM, 1878.

## HILL *vs.* WATSON.

Under the Act of 1869, re-enacted in Revised Statutes, page 497, authorizing erroneous judgments to be vacated on motion, a judgment cannot be vacated or set aside for error of law in the judgment itself, but only for error of fact, to be shown by satisfactory proof.

A judgment rendered in 1869 upon a contract for the purchase money of slaves, declaring such contract null and void, cannot be vacated or set aside under the said Act of 1869, the error in such judgment being one of law in the judgment itself not apparent upon its face.

In what cases relief may be had under the Act of 1869, (Rev. Stat., p. 497,) authorizing the Judge of the Circuit to vacate on motion erroneous judgments considered by the Court.

BEFORE NORTHROP, J., AT NEWBERRY, OCTOBER, 1876.

This was a motion to vacate an order confirming a report of a Referee made in 1869 in the case of John L. Hill and others against Joseph Watson as administrator of Thomas Watson, deceased, and others.

The case will be fully understood from the judgment of His Honor the presiding Judge, which is as follows:

NORTHROP, J. To correctly apprehend the motion now under consideration, it may not be amiss to repeat, somewhat in their chronological order, the events which enter to make up the history of this action.

The plaintiffs exhibited their bill in the then Court of Equity on the 17th day of May, 1866, praying for a partition of the lands belonging to the estate of Thomas Watson, deceased, amongst his next of kin, and for other relief. Subsequent to the date at which the bill was filed it was discovered that the estate of Thomas Watson, deceased, was much embarrassed by debt, and, under some circumstances, might be rendered insolvent; and, in view of these facts, the creditors were by an order required to present their demands and establish them as provided by law.

By an order made by Judge J. M. Rutland, bearing date the 12th day of March, A. D. 1869, all matters of account were referred to Thomas M. Lake, Esq., as Referee, who was required to report upon the same, to marshal the estate of the said Thomas Watson, deceased, and to require all creditors of his estate to render and establish the same, as required by law, on or before the 1st day of May, A. D. 1869.

Before the said Referee several creditors, as required by the order of Judge Rutland, presented their respective demands, amongst whom were Sebastian Kraft, James H. Williams, Gideon A. Glenn, as administrator of the estate of Joseph Shelton, deceased, each proffering a sealed note against the estate of Thomas Watson. The consideration of each of the several sealed notes just recited was proved to have been the purchase money of negro slaves. Thomas M. Lake, as said Referee, filed his report on the 9th day of July, 1869, wherein, amongst other things, he refused to allow the said demands of the said Sebastian Kraft, James H. Williams and Gideon A. Glenn, as aforesaid, upon the sole ground that the consideration of the same was purchase money of negro slaves, which, by the laws of South Carolina, rendered them null and void.

To this report exceptions were taken, which came up to be heard before His Honor L. Boozer, Judge of the Fifth Circuit, and on the 17th day of November, 1869, the exceptions were overruled and the report confirmed. No appeal was taken therefrom. To those creditors whose claims were favorably considered by said report of Thomas M. Lake, Esq., as Referee, certain funds then in Court were applied. But it is admitted and abundantly shown that there are other assets of the estate of Thomas Watson, deceased, which yet await distribution.

The creditors, Sebastian Kraft and James H. Williams, after due notice, applied to this Court, in open Court, on the 6th day of

October, A. D. 1871, by a motion to vacate and set aside as erroneous the judgment of Judge L. Boozer, dated the 17th day of November, A. D. 1869, upon the following grounds, to wit:

1. Because His Honor Judge Boozer erred in deciding the claims of these creditors illegal and void because given for the purchase money of negro slaves; and also that His Honor the Circuit Judge further erred in deciding the bond of Joseph Watson, administrator of the estate of Thomas Watson, deceased, void, it having been given for the purchase money of negro slaves.

2. Because His Honor the Circuit Judge erred in deciding that the Act of the General Assembly of this State declaring all obligations given to secure the purchase money of slaves null and void was constitutional.

The basis of this application to me by the creditors mentioned heretofore was that the Act of the General Assembly, passed in 1869, (§ 14, Stat., 214, 81,) authorized Circuit Courts to vacate and set aside judgment upon satisfactory proof being made to the Judge that the said judgments are erroneous and ought to be set aside, with the single proviso that, except under causes arising under the provisional government of South Carolina, no motion should be entertained for a new trial in any cause unless the motion be made within two years after the judgment rendered.

A similar motion was made by Messrs. Simpson & Simpson, attorneys of O. H. P. Fant, who presented the sealed note of Gideon A. Glenn, as administrator of Joseph Shelton, deceased, which had also been excluded from any participation in the application of the funds belonging to the estate of Thomas Watson, deceased, on the same ground as that of Kraft and Williams, viz., consideration being the purchase money of slaves. This claim of Fant had the additional ingredient that Fant had been compelled to pay a large sum, say $683.67, with interest from the 17th of November, 1869, (he having been the surety of the said Thomas Watson on said note,) subsequent to the decree of Judge Boozer, heretofore referred to, and the application to be let in and establish the demand was made while the fund from which it is to be paid is still in Court.

When the motion was first made in October, 1871, before His Honor Judge M. Moses, he hesitated, he said, although its justice was manifest, to grant it, because no proof of error other than the record itself was offered. His impression, he stated, was that other proof was necessary. Under such circumstances he postponed the

further consideration of the matter. Afterwards, when the matter was again called up, he signified his intention to grant the motion, and had an order prepared to that effect, of which, indeed, this order is a mere copy. He failed, however, on account of the order having been mislaid, to sign it. The matter now comes before me. I concur entirely with Judge Moses in the conclusions that he had reached. The motion was made within the time allowed by the Act, and its justice is too apparent to need other than a statement of the facts to sustain it. Indeed, the counsel who opposed the motion admitted that substantial justice was on the side of the moving parties. He resisted on the ground that the Act referred to is unconstitutional, being contrary to Section 20 of Article II, and Sections 1 and 4 of Article IV, of the Constitution of this State.

Section 20 of Article II reads as follows: "Every Act or resolution having the force of law shall relate to but one subject, and that shall be expressed in the title." The Act referred to was approved on the 16th day of March, 1869, and its first Section has been incorporated into the General Statutes of this State. The title of the Act is "An Act to empower the Judges of the Circuit to grant relief in case of erroneous judgments obtained during the existence of the provisional government of South Carolina;" and it is very apparent to my mind that it relates "but to one subject," which is "expressed in the title."

In the most general sense, the subject of a statute is some right, obligation or power, either public or private, created, modified or destroyed, for the purpose of allowing some end, either of public or private advantage, which constitutes the object of the statute. Where the rights, obligations or powers which are the subject of the statute appertain to a public function of the government, to be exercised through or by means of a public office, such office, by its established title, or the public officer who holds it, by his name of office, is, according to parliamentary usage and common understanding, the immediate and direct subject of the statute.—*Morton, Bliss & Co.* vs. *Comptroller General*, 4 S. C., 442.

Section 1 of Article IV of the Constitution is that Section which provides for the establishment of the Supreme and Circuit Courts of this State, and Section 4 declares what shall be the jurisdiction of the Supreme Court. I cannot see that the Act is contrary to either of these Sections. I therefore feel compelled to grant the motion.

It is ordered and adjudged that the decree or order referred to of Judge L. Boozer, made 17th November, 1869, and the report of the Referee, which it confirms, be vacated and set aside, and that it be referred to Silas Johnstone, Esq., to ascertain and report the amount of the debts outstanding against the said Thomas Watson, deceased, as well as those in favor of the parties herein named as the others, and to marshal the assets of said deceased, with leave to report any special matter. It is further ordered that any of the parties of these proceedings have leave to apply at chambers for such other orders as may be necessary herein, after giving five days' notice of such application to the attorneys for the other parties.

The plaintiffs appealed on the following grounds:

1st. Because Section 2 of Chapter CV, General Statutes, 497, relied on by the Court to sustain its jurisdiction in pronouncing the said judgment, is in conflict with Section 20, Article II, of the Constitution of the State of South Carolina.

2d. Because said Act is in conflict with Section 4 of Chapter IV of the Constitution of the State of South Carolina.

3d. Because Section 2 of Chapter CV, General Statutes, 497, without reference to its unconstitutionality, is not applicable to this case and in no wise sustains the judgment herein appealed from.

*Baxter*, for appellant.

*Johnstone*, contra.

November 20, 1878.   The opinion of the Court was delivered by

HASKELL, A. J.   In this cause a final order was set aside by the Circuit Judge, after the lapse of considerable time, on motion, upon the ground that the order was erroneous in law.   The authority for such proceeding relied on by the Circuit Judge is the Act of 1869, p. 214, re-enacted in the General Statutes, (Rev. Stat., 497): "In case a judgment or decree has been or hereafter shall be rendered by a Court of Common Pleas or Equity, it shall be lawful for either party, plaintiff or defendant, to move before the presiding Judge of the circuit in which said judgment was obtained to vacate or set aside said judgment, upon satisfactory proof being made to said Judge that said judgment is erroneous and ought to

be set aside; and upon such proof being made, the presiding Judge is hereby authorized to vacate and set aside said judgment and to order a trial *de novo.*"

It is unnecessary to recite the rest of the Act. The Court has been but little aided by argument or authorities on either side in this case; but as the Act seems to have caused considerable doubt and confusion, it is well to have a conclusion upon it, and it will receive as much attention as the pressure of the labor on hand admits. Both in the Court of law and that of equity in this State there had been previous to the passage of this Act power under certain circumstances to set aside judgments or decrees and to grant a trial *de novo,* or a rehearing, or a new hearing by bill of review, as the case might be. All the power which had previously been in the two Courts was, by the Constitution of 1868, vested in the Court of Common Pleas, with some exceptions unimportant, and which do not bear upon the question, but the distinct modes of procedure were preserved, although in the same Court, until by the adoption of the Code of Procedure, in 1870, the proceedings were merged and became identical in form. It was in this interval that the Act of 1869 was passed. It is plain that the Act was intended to make the mode of procedure the same in both Courts, and the mode adopted was, by motion, the same as it previously had been in the Common Pleas, but differing from what it had been in equity, where the application for a rehearing before decree filed was by petition, and after decree filed was by bill of review, which could not be filed until leave was granted.

The two years' proviso limiting the time in which a motion for "a new trial" may be made needs no consideration here, and it is doubtful on the face of the Act whether it legitimately relates to the preceding portion. Beyond this change in the mode of procedure, by which the same method is prescribed to both Courts, it is difficult to see any new law in the first portion of the Act. It confines the Judges to facts as the only grounds upon which the motion may be granted under this Act, for it says "upon *satisfactory proof* being made to said Judge that such judgment is erroneous and ought to be set aside, and *upon such proof* being made, the presiding Judge is hereby authorized, &c." "Proof" taken literally is the "perfection of evidence," (Bouv. L. D.) or is the "effect of evidence."—1 Greenleaf on Ev., § 1. But as in common use the end is often confounded with the means, so in language "proof" is

often used as a synonym with "evidence," and in this ordinary sense it manifestly is used in this Act, which, then, would read "upon satisfactory evidence." Evidence "in legal acceptation includes all the means by which any alleged matter of *fact*, the truth of which is submitted to investigation, is established or disproved."—*Ibid.* Questions of fact alone are susceptible of proof, and when technical words are used in a statute they must be given their technical meaning. The Judge, therefore, would be confined to the consideration of facts in arriving at his conclusion whether the judgment is erroneous and should be set aside. The Act confers no further power than the decision of what is *satisfactory* proof. It is not even the proof of facts satisfactory to his mind, but it is proof satisfactory to his mind of facts upon which the law would pronounce that the judgment is erroneous and should be set aside.

There are, however, some errors of law in the proceedings or judgment which are established by the proof of facts, and which may be included within the meaning of this Act. We will best explain them by briefly stating the principles which controlled the practice both in law and equity.

It was a settled proposition of law "that motions to set aside judgments for irregularity, defect or error are competent before our Court of Common Pleas in all cases where the writ of error would be in England. See *Mooney* vs. *Welch*, (1 Mills, 133,) in which case substitution of a motion here in open Court in the place of a writ of error there is fully considered and decided, and has been acted upon ever since; *Barnes* vs. *Branch*, 3 McC., 19."—*Mills & Co.* vs. *Mills & Dickson*, 6 Rich., 487.

The subject is discussed in every form in the numerous cases which naturally arose. See *Surtell* vs. *Briliford*, 2 Bay, 333; *Mooney* vs. *Welch*, 1 Hill, 133; *Muir* vs. *Murhead*, 2 Brev., 215; *Posey* vs. *Underwood*, 1 Hill, 263; *Henderson* vs. *Dial*, 1 McMullan, 293; *Ingram* vs. *Belk*, 2 Rich., 111; *Ingram* vs. *Belk*, 2 Strob., 208; *Williams* vs. *Lanneau*, 4 Strob., 27; *Haigler* vs. *Hay*, 2 Rich., 324; *Crane* vs. *Martin*, 4 Rich., 251.

The practice in all the cases is regulated by the rules which govern in cases of writs of error in England, and the grounds upon which the judgment may be set aside are the same. The English practice (which is our own) is best expressed by quoting from a leading authority on practice: "If a judgment in the King's Bench be erroneous in matters of fact only and not in point of law, it may

be reversed in the *same* Court by writ of error *coram nobis* or *quæ coram nobis resident,* \* \* as where the defendant, being under age, appeared by attorney, or the defendant was a married woman at the time of commencing the suit, or died before verdict or interlocutory judgment; for error in fact is not the error of the Judges, and reversing is not reversing their own judgment. So upon a judgment in the King's Bench, if there be error in the process or through the default of the clerks, it may be reversed in the same Court by writ of error *coram nobis.* But if an erroneous judgment be given in the King's Bench and the error lie in the judgment itself and not in the process, a writ of error does not lie in the same Court upon such judgment."—Tidd's Pr., 1056–8.

So in 2 Saunders, 101, note: "Error may be brought in the same Court where the judgment was given when the error is not assigned for any fault in the Court, but for some defect in the execution of the process or through the default of the clerks. \* \* \* \* \* \* So a writ of error may be brought in the same Court for an error in *fact.* \* \* \* But if the error be in *the judgment* itself and not in the process, a writ of error does not lie in the same Court, but must be brought in another."

The reason why the same Court as gave judgment can set aside the judgment on error of fact, fraud, misrepresentation, duress, abuse of process, &c., (*Posey* vs. *Underwood,* 1 Hill, 263,) is "because error in fact is not the error of the Judges; therefore the reversion of such judgment is not reversing their own judgment."— 2 Sellon's Practice, 400.

Thus, the proceeding may be had in the same Court where the error lies in mistake or deviation from the truth in matters of fact or in mistake or deviation from law by parties or by the subordinate officers of the Court during process. These latter may be called errors in law, but they are not errors of law in the judgment, for they occurred not in the judgment, but in process, and must be apparent in the record. The mode of procedure in equity by which to set aside a decree and get a rehearing or new hearing is distinctly stated in *Simpson* vs. *Downs,* 5 Rich. Eq., 421. If the application be made before the filing of the decree, it must be by petition and for a rehearing; if after the filing of the decree, the remedy can only be had by application in proper form for leave to file a bill of review.

The most recent case in which the power of the Court on the question of rehearing is distinctly stated is that of *Hunt* vs. *Smith*, 3 Rich. Eq., 465. On page 540, "a bill of review," says Dargan, Ch., who delivered the opinion, "and a motion for a rehearing are entertained on similar grounds. There are but two grounds on which either of these proceedings will lie: First. They will be entertained on account of error of law, apparent upon the face of the decree, and any part of the record may be resorted to for the purpose of making such error of law in the decree manifest. *  *  * The other ground upon which a bill of review or a motion for a rehearing will be entertained is newly-discovered testimony." He then proceeds to discuss the character of the testimony. The rule as thus laid down is much stronger than in any of the preceding cases. But the application was made to the Court of Appeals for a rehearing by that Court, and was made before the decision was rendered or pronounced. With this explanation the rule is entirely in accord with that laid down in the case of *Jeannerett* vs. *Radford*, (Rich. Eq. Cas., 469,) by the learned Chancellor before whom the petition for rehearing was heard, and by whom the difference between the rules in the English practice and our own is most clearly stated. On the rehearing he thus states the rule: "It was decided by the late Court of Appeals in equity that after a full and final hearing the Court is not at liberty to open cases for rehearing on account of error in the decree.—*Burn* vs. *Poang*, 3 DeS., 596. The present Court of Appeals, in the case of *Haskell* vs. *Raoul*, (1 McC. Ch., 22,) held the same opinion. The Court, to be sure, decides on the ground that the specific motion had been disposed of by the former Court, but strongly intimates the concurrence in the doctrine established. If the Court of Appeals cannot rehear its own decree, it would seem to follow that this Court cannot rehear a decree sanctioned by that Court. In England there can be no rehearing after an appeal to the House of Lords. But by the Act of Assembly of 1808 orders and decrees of the Judges not appealed from 'shall have the same effect with decrees sanctioned by the Court of Appeals.'— 7 Stat., 304. I think that I ought to rehear so as to correct any apparent error of a decree delivered by myself, provided the application be made before the time for appealing has elapsed. *  *  I have said 'a decree made by myself,' for my authority to rehear the decree of another Chancellor for error apparent would be more than questionable." *  *  * See also *Hinnin* vs. *Pickett*, (2 Hill

Ch., 351,) which was a case where the ground for rehearing was newly-discovered evidence.

In *Manigault* vs. *Deas*, (Bail. Eq., 283,) the point decided in *Haskell* vs. *Raoul* is affirmed—" that a bill of review will not lie for error in law apparent on the face of the decree. This is a point regarded as settled, and both policy and the safety of suitors require that it should not be open for argument."

The motion for rehearing before the decree is filed is analogous to the motion for new trial at the same term before judgment entered up, and the correction of error of law apparent upon the face of the decree is governed by nearly the same rules as the correction of judgment, as in *Mooney* vs. *Welch*, (Mills, 133,) for error apparent upon the record. It must be such an error in law, apparent on the face of the decree, as is "obvious on a mere statement, when the correction can be made consistently with the principles of the decree itself."—*Perkins* vs. *Lang*, 1 McC. Ch., 31, note.

In this State it has never extended further since a Court of Appeals in Equity has been established. The remedy has been by appeal, and by the Act of 1808 the orders and decrees of a Chancellor sitting on circuit, when not appealed from, have ever had the same force and effect as decrees of the Court of Appeals. Where a decree was impeached for fraud, or to be set aside or suspended for error in fact, the proceeding was by original bill. To this remedy the Act of 1869 would apply, and the grounds for the motion could be established by evidence.

The Code of Procedure, adopted in 1870, and re-enacted, together with the Act of 1869, (the latter, that of 1869, being altered by the omission of mention of the Court of Equity, and being applicable only to judgments in Common Pleas,) provides, by Section 197, special remedy in case of "mistake, inadvertence, surprise or excusable neglect," provided the application be made within one year after the party has had notice of the judgment, order or other proceeding of which he complains. The Code, in Title II, Chapter I, Revised Statutes, p. 654, further enacts (Section 349) that "the only mode of reviewing a judgment or order in a civil or criminal action shall be that prescribed by this Title." The only exception to review by appeal is in the case of orders "made out of Court without notice to the adverse party."

The view that we take of the Act of 1869 as it was enacted, or as it was re-enacted in the Revised Statutes, p. 497, confines the

meaning of the Act to the method of procedure, and recognizes in it no change in the legal grounds upon which the relief either at law or in equity would previously have been granted or refused.

There is no error apparent on the face of the decretal order made by the Circuit Judge in 1869, nor is error of fact, fraud, abuse of process, mistake or surprise alleged. The decretal order sustained the constitutionality of an ordinance and statute which were afterwards pronounced to be in violation of the Constitution of the United States. No appeal was taken from the order, and it is the law of that case just as much as if it had been confirmed by the Court of last resort.—*Duport* vs. *Johnston*, Bail. Eq., 279; *Johnston* vs. *Britton*, Dud. Eq., 274; Act 1808, 7 Stat., 304. But it is needless to cite further authority than that already adduced upon so well-established a proposition, which has not been changed or altered by the Act of 1869.

The judgment appealed from is reversed and the motion granted.

*Willard*, C. J., and *McIver*, A. J., concurred.